[Cite as *In re Z.H.*, 2015-Ohio-3209.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: Z.H. | : | APPEAL NOS. C-150301 |
| | | C-150305 |
| | : | TRIAL NO. F06-2497z |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgment Appealed From is: Affirmed

Date of Judgment Entry on Appeal:  August 12, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ernest W. Lee,* Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Phyllis Schiff*, for Appellant Mother,

*Erika N. Dority,* Guardian Ad Litem for Appellant Mother,

*Christopher P. Kapsal*, for Appellant Z.H.,

*Kacy C. Eaves*, Guardian Ad Litem for Appellant Z.H.

Please note:  this case has been removed from the accelerated calendar.

**STAUTBERG, Judge.**

{¶1}   Z.H. and his mother each appeal the judgment of the Hamilton County Juvenile Court granting the Hamilton County Department of Job and Family Services ("HCJFS") permanent custody of Z.H.

## Z.H.'s Standing to Appeal

{¶2}   This court has not addressed the issue of whether a child has standing to appeal the termination of his parents' parental rights.

{¶3}   It is well-settled that any party who attempts to appeal a judgment must have standing to invoke the jurisdiction of the appellate court. *Ohio Contract Carriers Assn. v. Pub. Util. Comm. of Ohio*, 140 Ohio St. 160, 161, 42 N.E.2d 758 (1942).   To establish standing, appellant must show (1) an injury that is (2) fairly traceable to the opposing party's allegedly unlawful conduct, and (3) that is likely to be redressed by the requested relief.  *Moore v. Middleton,* 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  "These three factors—injury, causation, and redressability—constitute 'the irreducible constitutional minimum of standing.' " *Moore*, citing *Lujan* at 560.

{¶4}   Here, Z.H. argues that he has standing to appeal the trial court's decision because his rights were prejudiced by the trial court's decision.  While Z.H. does not elaborate on what "right" was affected, he does cite R.C. 2151.01(A) in support of his position that children have a right to be raised by their natural families.  In pertinent part, R.C. 2151.01(A) provides that children subject to R.C. Chapter 2151 should be cared for "in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety."  Based on this code section, we hold that a child that is the subject of a

permanent-custody proceeding has a legal interest in being cared for by his or her natural parents.

{¶5} In this case, Z.H. had had counsel appointed for him pursuant to *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110. At trial, Z.H. advocated against a grant of permanent custody to HCJFS. He argued that his desire to maintain a positive relationship with his mother would be adversely affected by a termination of mother's parental rights. Z.H.'s interest in being cared for by his mother was injured when the trial court awarded custody to HCJFS, an opposing party, thereby terminating mother's parental rights. And Z.H.'s injury could be redressed by this court if we were to reverse the trial court's judgment. We therefore hold that Z.H. has standing to bring this appeal.

{¶6} We note that this case is distinguishable from *In re A.W.*, 1st Dist. Hamilton No. C-120787, 2013-Ohio-909, and *In re T.W.*, 1st Dist. Hamilton No. C-130080, 2013-Ohio-1754. In each of those cases, we determined that appellants lacked standing to appeal the granting of permanent custody to HCJFS because the appellants in each case argued that a nonappealing third party should have been granted legal custody of the children at issue. In other words, appellants in those cases were attempting to assert someone else's injury as the basis for their appeals. Here, Z.H. is asserting his own injury.

## The Merits of Mother's and Z.H.'s Appeals

{¶7} In Z.H.'s single assignment of error, he contends that the trial court's judgment awarding permanent custody to HCJFS is not supported by sufficient evidence. In mother's sole assignment of error, she contends that the trial court's judgment is not supported by sufficient evidence, and is against the manifest weight of the evidence. We address these assignments of error, together.

3

{¶8} A juvenile court may terminate parental rights and grant permanent custody of a child to a children's services agency if it finds by clear and convincing evidence that (1) the child's best interest would be served by a grant of permanent custody to the agency, and that (2) one of the conditions enumerated in R.C. 2151.414(B)(1)(a) through (e) has been met. R.C. 2151.414(B); *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 48. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶9} "Sufficiency of the evidence" is a term of art meaning that legal standard which is applied to determine whether evidence is legally sufficient to support a judgment. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541, (1997). It is a test of adequacy. *Id.; see Eastly v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶10} When evaluating a claim that a judgment was contrary to the manifest weight of the evidence, we must review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Thompkins* at 387; *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). We note that deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

## Best-Interest Factors

{¶11} In determining a child's best interest, the court must consider "all relevant factors," including (1) the child's interaction with parents, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child, (2) the wishes of the child, as expressed by the child or a guardian ad litem, (3) the custodial history of the child, (4) the child's need for legally secure placement and whether that type of placement can be achieved without a grant of permanent custody, and (5) whether any of the factors under R.C. 2151.414(E)(7) through (11) apply. R.C. 2151.414(D)(1)(a) through (e).

{¶12} Here, the trial court made detailed findings in regard to each factor. Among other things, the court found that, while Z.H. is bonded with and loves his mother, mother was unstable and struggled with what appears to be severe mental-health issues. Mother had exhibited suicidal, manipulative, and delusional behavior, some of which Z.H. had witnessed. Mother did not take part in the permanent-custody proceedings. Moreover, she had apparently left the jurisdiction and had refused to supply an address to the juvenile court. She had not seen Z.H. for over a year at the time of trial. Father was not involved in Z.H.'s life.

{¶13} As for his custodial history, Z.H. had lived with his paternal grandfather from birth until age three. He lived with mother for the next three years, until she attempted suicide. HCJFS was then granted interim custody. During that time, Z.H. was in and out of foster care, was difficult to control, and was hospitalized for suicidal behaviors. When Z.H. was discharged from the hospital, HCJFS placed him with his aunt, where he thrived. The court found that the time that Z.H. had lived with aunt had been the most stable of his life. Aunt wishes to adopt Z.H., and this cannot be done without first granting HCJFS permanent custody of Z.H.

### R.C. 2151.414(B)(1)(a) Factor

{¶14} As to the R.C. 2151.414(B)(1)(a) through (e) factors, the court found that R.C. 2151.414(B)(1)(a) existed in this case. R.C. 2151.414(B)(1)(a) provides that a court may not grant a children's services agency permanent custody of a child without first determining that the child cannot be placed with either parent within a reasonable time, or should not be placed with either parent. In making such a determination, the court must find that at least one of the factors listed in R.C. 2151.414(E) has been established by clear and convincing evidence.

{¶15} Here, the court found that multiple R.C. 2151.414(E) factors existed. Regarding father, the court found that father has had no involvement in Z.H.'s life, and has not financially supported or regularly visited or communicated with his son. *See* R.C. 2151.414(E)(4) and (10). As to mother, the court found that mother has mental-health issues that have substantially interfered with her ability to parent Z.H., and that were unlikely to be resolved within a year from the court's custody hearing. *See* R.C. 2151.414(E)(2). The court also found that mother had failed to remedy the circumstances that had led to Z.H.'s removal from her home. *See* R.C. 2151.414(E)(1). Specifically, mother failed to engage in services, failed to attain treatment for her mental-health issues, and continuously engaged in suicidal, manipulative and delusion behaviors. *See id.* The court further determined that mother's behavior had had a negative impact on Z.H., because Z.H. had witnessed mother arguing and fighting with neighbors and police. He also witnessed at least one of mother's attempts to commit suicide. *See* R.C. 2151.414(E)(16).

{¶16} Upon a review of the record, we hold that all of the court's findings under the best-interest factors and the R.C. 2151.414(B)(1)(a) factor were based on sufficient evidence. Therefore, Z.H.'s assignment of error is overruled.

{¶17}  In regard to the weight of the evidence, mother claims that the trial court should have afforded more weight to the fact that her son loves her, and wants to be with her.  Mother also points out that she has never physically harmed Z.H.

{¶18}  We cannot say that the trial court so lost its way in weighing the evidence presented as to create a manifest miscarriage of justice.  We note that while there is no evidence that mother ever physically harmed Z.H., Z.H. has been adversely affected by witnessing several instances of aggression and suicidal ideation by mother.  Mother's sole assignment of error is overruled.

{¶19}  The trial court's judgment is affirmed.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **MOCK, J.**, concur.

Please note:

The court has recorded its own entry this date.